UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LEE F. FERGUSON, Jr.,<br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | C.A. No. 14-151-M-PAS |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Plaintiff Lee Ferguson, Jr., brings this action under 42 U.S.C. § 405(g) to review a final decision of the Social Security Commissioner (the "Commissioner") finding that he was not disabled.[1] The Commissioner issued a final decision, in accordance with the ruling of an Administrative Law Judge ("ALJ"), denying Mr. Ferguson's claim for Disability Income Benefits ("DIB") under Title II of the Social Security Act. Mr. Ferguson seeks reversal or remand of the disability determination (ECF No. 7), while the Commissioner seeks an affirmance of the decision. (ECF No. 8).[2] After a thorough review, this Court finds that the ALJ's failure to give appropriate weight to Mr. Ferguson's treating physician necessitates remand to the ALJ.

---

[1] Section 405(g) provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" and that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."

[2] Mr. Ferguson also filed a Reply to the Commissioner's Motion to Affirm. (ECF No. 9).

## I. BACKGROUND

### A. Procedural History

Mr. Ferguson filed his application for Social Security disability insurance benefits on September 7, 2011, alleging that he became disabled on October 1, 2009.[3] (Tr. at 11, 122-123).[4] Mr. Ferguson's application was denied initially, *id.* at 71-73, and on reconsideration, *id.* at 75-77, after which he requested a hearing before an ALJ. *Id.* at 78. ALJ Gerald Resnick held a hearing at which Mr. Ferguson, who was represented by counsel, and a vocational expert appeared and testified. *Id.* at 23-53. The ALJ issued a decision finding that Mr. Ferguson was not disabled from October 1, 2009 through the date of the ALJ's decision, and was therefore not entitled to receive the requested benefits. *Id.* at 11-19. The Appeals Council denied Mr. Ferguson's request for review, *id.* at 1-3, rendering the ALJ's decision the final decision of the Commissioner. Mr. Ferguson has exhausted his administrative remedies, and this case is now ripe for judicial review before this Court under 42 U.S.C. § 405(g).

### B. Work History

Mr. Ferguson was approximately fifty years old on his alleged disability onset date and fifty-two years old on the date of the ALJ's decision. (Tr. at 19, 122). He is a college graduate. *Id.* at 140. He previously worked as an assistant project manager/project engineer, site superintendent, project manager/estimator, site clerk/assistant superintendent, architect draftsman, and pre-loader. *Id.* at 156. Mr. Ferguson also worked in building maintenance and in construction and compressor work, where he was self-employed. *Id.*. Mr. Ferguson testified at the ALJ hearing that he stopped working as a draftsman due to concentration issues and

---

[3] Mr. Ferguson, who initially filed his claim without an attorney, explained that while he has been out of work since October 1, 2009, he became disabled as of May 1, 2011. (ECF No. 7-1 at 1).

[4] "Tr." refers to the "Transcript of Proceedings" filed in this case.

economic cutbacks, but he was laid off due to his concentration. *Id.* at 42. He further stated that he collected unemployment between September 2009 and September 2011, and that to receive unemployment, he had to represent that he was able to work. *Id.* at 42-43.[5]

C. **Medical Evidence**

Mr. Ferguson alleged that he became disabled due to degenerative joint disease in his knees, a vertebra fracture, muscle spasms in his lower back, arthritis in his hips and back, a herniated disc in his neck, pinched nerves, and a degenerated ear filter. *Id.* at 139.

Mr. Ferguson received all of his medical treatment from the Veterans Administration Medical Center in Providence ("VA") where his primary care physician was Dr. John P. Bas, M.D. In December 2009, Mr. Ferguson began to complain of sharp right scapula pain, radiating through the front of his shoulder, with occasional arm numbness. *Id.* at 231. The VA referred him to physical therapy. *Id.* at 229. Mr. Ferguson also complained of cervical spine pain and diagnostic tests showed disc protrusion, degenerative changes, and minimal disc bulging. *Id.* at 221, 228. He wore a cervical traction unit. *Id.* at 220. He began physical therapy a month later and continued to report pain in his shoulder, into his arm and wrist, as well as reduced strength. *Id.* at 225.

During an orthopedic exam in June 2010, Mr. Ferguson had positive results on the Neer/Hawkins tests for shoulder impairment and on the Phalen's test for hand impingement. *Id.* at 218. In July 2010, Mr. Ferguson cited knee pain to Dr. Bas, *id.* at 210, and began using a TENS pain unit and night splints for carpal tunnel. *Id.* at 208-210.

By December 2011, Mr. Ferguson walked with a limp and required a wraparound hinged knee brace and a straight cane. *Id.* at 251-252; 412.

---

[5] See footnote 3 *supra* for an explanation of the date of disability discrepancy.

In the spring of 2012, the pain in Mr. Ferguson's knee, back, and neck increased. *Id.* at 389-90. An MRI showed multilevel degenerative changes in his lumbar spine. *Id.* at 362, 398. In late 2012, Mr. Ferguson continued with complaints of chronic knee, lower back, and neck pain. *Id.* at 364. A 2013 MRI of his thoracic spine noted abnormalities. *Id.* at 354-55.

### D. Mr. Ferguson's Testimony

Mr. Ferguson testified that he only drives short distances once a day, *id.* at 27, he can sit and stand for twenty minutes each, he can walk for twenty to twenty-five minutes, after which his knees begin to buckle, and he can lift and carry less than five pounds. *Id.* at 28. Mr. Ferguson stated that he has wrist problems in both hands, causing him to drop things and lose his grip, and that he sometimes has problems with fine manipulation, depending on the severity of his pain. *Id.* at 31. Mr. Ferguson also testified that he has problems opening jars and cutting food, he can write for five minutes before his hand starts to shake, and his "legs and arms keep going numb and tingly." *Id.* at 32-33. Mr. Ferguson further reported that he has problems with both shoulders, with pain fluctuating between a five and a nine, and he has significant problems with repetitive pushing/pulling of arm and leg controls, stooping, squatting, kneeling, bending, and climbing. *Id.* at 33-34. Mr. Ferguson added that he has problems handling stress and ordinary work pressures, and his concentration can be off due to pain. *Id.* at 34. Mr. Ferguson went on to testify that he can shop for groceries and he goes to antique car shows once or twice a week during the summer if he is not in pain. *Id.* at 37.

### E. Opinion Evidence

In addition to Mr. Ferguson's complete medical records, the following medical evidence was in the record before the ALJ:

1. Mr. Ferguson's treating primary care doctor for the prior two years, Dr. Bas, completed a Treating Source Opinion. *Id.* at 413-15, Exhibit 6F. Dr. Bas opined that Mr. Ferguson "suffer[s] from an impairment which significantly limits his[] physical ability to do basic work related activities." *Id.* at 413. He stated that Mr. Ferguson has chronic back pain, neuromyalgia, neuritis, and osteoarthritis with moderate to severe weakness, pain with movement, and decreased strength. *Id.* He opined that Mr. Ferguson "cannot sustain competitive employment on a full time, ongoing basis." *Id.* at 414. Dr. Bas stated that Mr. Ferguson's medically determined impairment has been diagnosed by objective signs, to wit, an MRI and x-ray. *Id.* at 415. Finally, Dr. Bas explained that Mr. Ferguson is likely to be absent from work more than 4 days per month due to his impairments. *Id.*

2. Vocational Expert Edmond Calandra testified that the limitations identified by Dr. Bas, specifically the fact that Mr. Ferguson is likely to be "off task" one hour a day, would make him unable to sustain full time work. *Id.* at 52. The Vocational Expert also testified that based on Mr. Ferguson's statements, if deemed credible, and the record medical evidence, then "[t]here would be no jobs" that Mr. Ferguson could perform. *Id.* at 50.

3. Two state agency reviewing physicians – Drs. Henry Laurelli and Youssef Georgy – opined that Mr. Ferguson could occasionally lift fifty pounds and sit and stand for about six hours each workday. *Id.* at 57, 66-67.

4. State agency psychologist Dr. Jeffrey Hughes opined, based on a records review, that Mr. Ferguson did not have a medically determinable mental impairment. *Id.* at 65.

5. The Department of Veterans Affairs Rating Decision found that Mr. Ferguson had an overall rating of 80%. *Id.* at 416-418.

## II. STANDARD OF REVIEW

"The Social Security Act specifically mandates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .'" *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981) (quoting 42 U.S.C. § 405(g)). A court "must uphold the Secretary's findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Id.* at 222-23 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "It is the responsibility of the Secretary to determine issues of credibility and to draw inferences from the record evidence." *Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (citing *Rodriguez*, 647 F.2d at 222). "Indeed, the resolution of conflicts in the evidence is for the Secretary, not the courts." *Id.*

"[I]t is well to bear in mind that '[t]he Social Security Act is a remedial statute which must be 'liberally applied.'" *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 531 (6th Cir. 1992) (quoting *Marcus v. Califano*, 615 F.2d 23, 29 (2nd Cir. 1979)). "[T]he Social Security Act should be construed liberally in order to further its remedial purposes." *Slessinger v. Sec'y of Health & Human Servs.*, 835 F.2d 937, 943 (1st Cir. 1987) (citing *Cunningham v. Harris*, 658 F.2d 239, 243 (4th Cir. 1981). The *Cunningham* court explained that

> [W]e are also bound to interpret the Social Security Act as a program of social insurance on which people can rely to provide for themselves and their dependents. Claimants are the beneficiaries of insured wage earners, not recipients of government gratuities, and are entitled to a broad construction of the Act. In practical terms, when a Social Security Act provision can be reasonably interpreted in favor of one seeking benefits, it should be so construed.

658 F.2d at 243 (citations omitted). *See also Smirga v. Sec'y of Health & Human Servs.*, 607 F. Supp. 680, 685 (W.D. Pa. 1985) ("Where evidence has been presented and the case is close as it

6

involves the application of the Social Security Act, the balance should be cast in favor of, rather than against, coverage in order to fulfill the statute's broad and beneficent objects." (citation omitted)).

## III. ANALYSIS

### A. ALJ's Decision

The ALJ issued the decision that is now pending for this Court's review under the five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At Step 1, the ALJ found that Mr. Ferguson had "not engaged in substantial gainful activity since October 1, 2009, [his] alleged onset date." (Tr. at 13). At Steps 2 and 3, the ALJ found that Mr. Ferguson's right shoulder dysfunction and cervical degenerative disc disease were severe impairments, but they did not meet or medically equal the requirements of any per se disabling impairment under the regulatory Listing of Impairments. *Id.* at 13-14. The ALJ then determined that Mr. Ferguson retained the residual functional capacity ("RFC") to perform work at the medium exertional level. *Id.* at 14. At Step 4, the ALJ found that Mr. Ferguson could perform his past relevant work as an architectural draftsman and a project manager. *Id.* at 19. Accordingly, the ALJ concluded that Mr. Ferguson was not disabled from October 1, 2009 through the date of his decision. *Id.*

### B. Mr. Ferguson's Challenges to the ALJ's Decision

Mr. Ferguson raises three main challenges to the ALJ's denial of benefits. First, he alleges that the ALJ failed to provide good reasons for rejecting the Treating Source Opinion of Dr. John P. Bas. (ECF No. 7-1 at 7-12). Second, he asserts that the ALJ relied on outdated and uninformative opinions of non-examining state physician concerning Mr. Ferguson's residual

functional capacity. *Id.* at 12-15. Third, he contends that the ALJ failed to obtain and use a current medical expert opinion. *Id.* at 15-16.

Medical opinions from treating sources generally are given "more weight" "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). This is especially true when the claimant suffers from debilitating pain. The treating health care provider in this situation is better able to assess, evaluate, diagnose, and treat the individual compared with a witness who simply reviews medical records. When "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the regulations state that it is given "controlling weight." *Id.*; *see also Polanco-Quinones v. Astrue*, 477 F. App'x. 745 (1st Cir. 2012) (vacating the district court's denial of disability benefits where "the ALJ failed to give supportable reasons for not according controlling weight to [the treating physician's] opinions").

The Commissioner's regulations also set forth a variety of factors to be utilized in evaluating the degree of weight of a treating source's opinion. 20 C.F.R. §§ 404.1527(c), 416.927. Those factors are: (1) the "[l]ength of the treatment relationship and the frequency of examination," 20 C.F.R. § 404.1527(c)(2)(i); (2) the "[n]ature and extent of the treatment relationship," 20 C.F.R. § 404.1527(c)(2)(ii); (3) the supportability of the opinion, 20 C.F.R. § 404.1527(c)(3); (4) the consistency of the opinion "with the record as a whole," 20 C.F.R.

§ 404.1527(c)(4); (5) the specialization of the source, 20 C.F.R. § 404.1527(c)(5); and (6) "[o]ther factors." 20 C.F.R. § 404.1527(c)(6).

Additionally, Social Security Ruling ("SSR") 96-2p(6)'s Policy Interpretation reminds adjudicators "that a finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." 1996 WL 374188, at *4 (July 2, 1996). It explains that such "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." *Id.* And it notes that "[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Id.*

In Mr. Ferguson's case, the ALJ gave the treating physician only limited weight primarily for three reasons. The first reason was that while Dr. Bas assessed chronic back pain, Mr. Ferguson's pain was treated only with ibuprofen as needed. (Tr. at 16, 17). Second, Dr. Bas concluded that Mr. Ferguson had moderate to severe pain that precluded sustained attention yet there were no mental status exams by Dr. Bas in the record to support this conclusion. *Id.* at 18. Third, the ALJ found that Mr. Ferguson independently maintained a household and took care of a disabled girlfriend and his son yet Mr. Ferguson's attorney was unable to show from Dr. Bas' records a consistent finding such as loss of motion, muscle spasm, or abnormal MRI. *Id.*

The ALJ failed to give the treating source's opinion its proper weight in this case. While the ALJ stated that he gave the treating physician's opinion "limited weight," *id.* at 18, in fact he gave it no weight and rejected it in total. Moreover, the ALJ failed to give supportable reasons for his decision to reject the treating physician's opinion.

For a physician's opinion to be given controlling weight, the following criteria must be present: 1) the opinion must be from a treating source; 2) the opinion must be a medical opinion concerning the nature and severity of the claimant's impairment; 3) the opinion must be well-supported "by medically acceptable clinical and laboratory diagnostic techniques;" and 4) the opinion must be consistent "with the other substantial evidence in the case record." SSR 96-2p, 1996 WL 374188, at *1. The ALJ should have given Dr. Bas' opinion greater weight because each criterion was met.

First, Dr. Bas personally evaluated and treated Mr. Ferguson for two years at the VA. He is a qualified and competent to offer an opinion as the "treating source." He provided care for Mr. Ferguson during the entire period relevant to his disability application. Second, he offered his medical opinion about the nature and severity of Mr. Ferguson's impairment, explaining that he "suffers from an impairment which significantly limits his physical ability to do basic work related activities." (Tr. at 413). Dr. Bas opined that Mr. Ferguson had moderate to severe chronic pain in the low back/neck and neuralgia that was so severe it "preclude[d] sustained attention, concentration, and productivity [] necessary for full-time employment" and would cause more than four absences from work per month. *Id.* at 413-415. The Vocational Expert then testified that if Mr. Ferguson was off task an hour a day because of absences or his inability to concentrate, then he wouldn't be able to work full time. *Id.* at 52.

Third, Dr. Bas had access to Mr. Ferguson's full records for the entire relevant period. *Id.* at 413. His opinions on Mr. Ferguson were consistent with all of his medical records and all objective testing. Medically acceptable diagnostic tests support his opinion. *Id.* at 353-356. A cervical MRI showed significant changes at C2-C3 and C4-C5, leading to the conclusion that Mr. Ferguson had "Multilevel degenerative change in the cervical spine, most prominent at C4-

C5 where there is moderate canal stenosis and moderate bilateral neuroforaminal narrowing." *Id.* at 356. Dr. Bas ordered an MRI of Mr. Ferguson's thoracic spine. *Id.* at 353. It noted abnormalities at T8-T9, T3-T4, and T7-T8. *Id.* Two weeks later, Dr. Bas completed the Treating Source Opinion form. *Id.* at 414, 415. Dr. Bas states in his Treating Source Opinion that Mr. Ferguson's medically determined impairment has been diagnosed by objective signs, to wit, MRIs and x-ray imaging. *Id.* at 415.

Fourth, Dr. Bas' opinion is consistent with other substantial evidence in the records. In fact, Mr. Ferguson's entire medical records are consistent with Dr. Bas' opinion. The suggestion by the ALJ that Dr. Bas had no objective basis for the limitations contained in his Treating Source Opinion is factually incorrect. As explained *supra*, Dr. Bas ordered and reviewed MRIs. The only contrary reports in the record are from state agency consultants who never saw, treated, or evaluated Mr. Ferguson and their opinions are not consistent with the medical records or the objective testing. *See, e.g., id.* at 61-69. Moreover, one of the state agency consultant's opinions (on whose opinion the ALJ based his RFC determination) was based on outdated materials and did not include the 2012 opinions of Dr. Bas or any of the medical records generated during the year leading up to the ALJ's decision. *See, e.g., id.* at 67 (signature dated 01/04/2012). Dr. Bas' opinion was the only one based on the complete and relevant medical evidence.

The ALJ's reasoning for giving Dr. Bas' opinion limited weight is not supported by the record. For example, the ALJ stated that he gave the opinion limited weight in part because some of Mr. Ferguson's activities from the Adult Function Report, dated January 17, 2012,[6] were not consistent with Dr. Bas' limitations. *Id.* at 18, 172-79. The forms, upon which the ALJ

---

[6] The report is indexed as though it was dated January 17, 2012, but the date 1-12-2012 appears on the document. *Compare* Court Transcript Index for Ex. No. 83 *with* Tr. at 179.

11

relied, however, were more than a year old at the time of the ALJ's decision. These outdated reports cannot form a basis for rejecting the treating source's complete and current opinion.

For all of these reasons, this Court remands this matter to the ALJ to give appropriate weight to the treating physician's opinion.[7]

## IV. CONCLUSION

Mr. Ferguson's Motion to Reverse (ECF No. 7) is GRANTED to the extent that this Court REVERSES the decision of the Commissioner and REMANDS this proceeding under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The Commissioner's Motion to Affirm (ECF No. 8) is DENIED.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

December 9, 2014

---

[7] This Court therefore does not need to address Mr. Ferguson's two other points of alleged error.